**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

**LEE F. KENNEDY,**

    **Plaintiff,**

v.                                    Case No. 3:08cv389/MCR/MD

**MIKE ADKINSON,**

    **Defendant**
_____/

**O R D E R**

In this diversity action, Plaintiff Lee F. Kennedy sues Defendant Mike Adkinson for breach of promissory note. Adkinson asserts counterclaims against Kennedy relating to land development ventures in which the parties, through their respective, wholly owned corporations, were involved. Specifically, Adkinson sues Kennedy for breach of fiduciary duty, breach of operating agreement, and usurpation of corporate opportunity.[1] Presently before the court is Kennedy's motion for summary judgment (doc. 30), on her claim and Adkinson's counterclaims, on the grounds that Adkinson lacks standing to bring his counterclaims and Kennedy is not personally liable for actions she took in her corporate capacity. Adkinson has filed a response (doc. 38). For the reasons given below, the court GRANTS Kennedy's motion.

**Background**

Kennedy is a Texas resident; Adkinson resides in Florida. In 2005, the parties, along with other investors, organized limited liability companies for the purpose of

---

[1] Adkinson makes the same allegations in two Counts; each Count concerns the parties' attempts to develop a different parcel of land, known respectively as the Teagarden Project and the Factory Hills Project. Adkinson seeks declaratory relief and damages.

Case No: 3:08cv389/MCR/MD

purchasing and developing land on the Mississippi Gulf Coast. The sixteen, similarly named and numbered companies were Mississippi Investors I, LLC through Mississippi Investors XVI, LLC. Adkinson's counterclaims involve only Mississippi Investors I, LLC ("MI1") and Mississippi Investors XI, LLC ("MI11"). The parties, and the other investors, were not members of the companies as individuals; instead, the companies' members were the investors' wholly owned corporations. For example, the members of MI1 were: MS Kennedy I, Inc. (owned by Kennedy), Mississippi Capital Investments I, Inc. (owned by Adkinson), and Mississippi Developers I, Inc. (owned by David Fleisher, a non-party). Similarly, the members of MI11 were: MS Kennedy XI, Inc. (owned by Kennedy), Mississippi Capital Investments XI, Inc. (owned by Adkinson), Mississippi Developers XI, Inc. (owned by Fleisher) and O.W.O. MS Properties XI, Inc. (owned by Robert Windham, a non-party). All the claims at issue in this case relate to these limited liability companies and their member corporations. To avoid confusion due to the overlapping timelines involved with the claims, the court considers the background relevant to each claim in turn.

The Promissory Note

On December 12, 2006, Adkinson and Kennedy, through their respective corporate entities, executed a membership interest purchase agreement. Specifically, nine of Kennedy's corporate entities (MS Kennedy VI, VII, VIII, IX, X, XIII, XIV, XV and XVI, Inc.) agreed to sell to nine of Adkinson's corporate entities (Mississippi Capital Investments VI, VII, VIII, IX, X, XIII, XIV, XV and XVI, Inc.) their respective shares of nine of the limited liability companies (Mississippi Investments VI, VII, VIII, IX, X, XIII, XIV and XVI, LLC). Thus, MS Kennedy VI, Inc. sold to Mississippi Capital Investments VI, Inc. its share of Mississippi Investments VI, LLC, and so on. The same day, pursuant to the terms of the agreement, Adkinson, in his individual capacity, executed a balloon promissory note, payable to Kennedy, in her individual capacity, in the principal amount of $484,024.53.[2] The validity of the note is not in dispute. By the note's terms, payment was due eighteen months after the effective date of the note, on June 13, 2008. The note also provided, in

---

[2] Under the terms of the membership interest purchase agreement, Adkinson executed another promissory note payable to Kennedy; however, that promissory note is not in dispute.

Case No: 3:08cv389/MCR/MD

the event of default, for attorney's fees and legal expenses incurred to collect on the note. Kennedy alleges, and Adkinson does not dispute, that Adkinson has not made payment on the note.

MI1 - The Teagarden Project

On February 27th, 2006, Kennedy purchased property on Teagarden Road, Gulfport, Mississippi ("Teagarden Project") in her individual name. On or about August 14, 2006, she conveyed the property to MI1, in exchange for a Deed of Trust and Promissory Note in the amount of $382,000.00. On August 18th, 2006, MI1's members entered into an operating agreement pursuant to Mississippi law. The same day, MI1 entered into a development agreement with Adkinson's wholly owned development company, NFC Development, Inc. ("NFC"). The development agreement was signed by David Fleisher, in his capacity as president of MI1, and Adkinson, in his capacity as president of NFC. Under the terms of the development agreement, NFC coordinated construction at the Teagarden Project and expended $302,000 which was to be repaid by MI1 to NFC. The operating agreement gave NFC a higher priority for payment than loans from members of the LLC. Kennedy later threatened to foreclose on the project unless her Deed of Trust and Promissory Note were paid immediately.[3] The parties negotiated to delay or prevent foreclosure, but did not reach an agreement. On December 27, 2007, Kennedy initiated foreclosure proceedings against MI1, seeking to foreclose her Deed of Trust and Promissory Note. MI1 delivered to Kennedy a deed in lieu of foreclosure. In his counterclaim, Adkinson maintains he should be reimbursed for NFC's development costs before Kennedy receives any profit from the Teagarden Project in accordance with the repayment terms of the operating agreement.

MI11 - The Factory Hills Project

On July 15, 2006, MI11's members entered into an operating agreement pursuant to Mississippi law. The same day, MI11 entered into a development agreement with NFC, which coordinated construction on property owned by MI11, in Factory Hills Subdivision,

---

[3] The record is unclear as to the timing of Kennedy's initial demand for payment.

Case No: 3:08cv389/MCR/MD

Gulfport, Mississippi ("Factory Hills Project") and expended $291,387.58 which was to be repaid by MI11 to NFC. Similar to the Teagarden Project, the operating agreement gave NFC a higher repayment priority than for loans from members of the LLC. On July 20, 2006, MI11 purchased 203 residential lots in Factory Hills Subdivision. Fleisher and Kennedy obtained a $1,319,500.00 credit line from Whitney Bank for the purchase price. In return, they received a promissory note in the same amount from MI11. On December 15, 2006, the Factory Hills Project was refinanced at Statewide Bank and Fleisher and Kennedy's note was repaid in full. On December 20, 2006, MI11 entered into a contract for the sale of 152 fully developed lots of the Factory Hills Project to Harrison County Habitat for Humanity, Inc. Adkinson alleges that, as payments came due on the Statewide Bank Note, Kennedy refused to contribute additional capital necessary to pay the note, or either release additional financial statements or sign additional guarantees to obtain more financing, resulting in Statewide Bank threatening foreclosure. Kennedy denies these allegations. It is undisputed that Kennedy sought financing and personally acquired the Factory Hills Project subject to the Statewide Bank debt. Again, Adkinson maintains in his counterclaim that he should be reimbursed for NFC's development costs before Kennedy receives any profit from the Factory Hills Project.

On June 9, 2008, Kennedy filed the instant case in this court. On November 10, 2008, Adkinson filed his answer and counterclaim. On July 15, 2009, Kennedy filed the pending motion.

**Discussion**

A motion for summary judgment should be granted if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Welding Servs., Inc. v. Forman*, 509 F.3d 1351, 1356 (11th Cir. 2007). The court must avoid weighing contradictory evidence or making credibility determinations, *Stewart v. Booker T. Washington Ins.*, 232 F.3d 844, 848 (11th Cir. 2000), and must draw all reasonable inferences in the nonmoving party's favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Kennedy's Breach of Note Claim

The interpretation of an unambiguous contract is a matter of law.[4] *See Lawyer Title Ins. Corp. v. JDC (Am.) Corp.*, 52 F.3d 1575, 1580 (11th Cir. 1995). In accord with the promissory note's choice of law provision, the court applies Florida law. *See Walls v. Quick & Reilly, Inc.*, 824 So. 2d 1016, 1018 (Fla. 5th DCA 2002). Under Florida law, the elements of breach of contract are: (1) a valid contract; (2) a material breach; and (3) damages. *See Friedman v. New York Life Ins. Co.*, 985 So. 2d 56, 58 (Fla. 4th DCA 2008). Kennedy claims the parties entered into a valid note, payment of note became due on June 13, 2008, and Adkinson never made a payment of principal or interest on the note. Kennedy seeks damages from Adkinson in the amount of $505,805.56, comprising the principal and interest due on the note as of the due date, plus prejudgment interest from the due date to the date of judgment at the rate of $41.57 per day. In support of her position, Kennedy provides her affidavit and the note itself. In response, Adkinson asserts he has setoff rights based on his counterclaims against Kennedy, thus claiming a genuine issue of material fact exists regarding Kennedy's damages. The court notes that Adkinson has not contested the validity of the note or his failure to make payment when due, and finds that Adkinson's bare denial of Kennedy's breach of note claim, without specific facts, does not create a genuine issue of material fact regarding Adkinson's liability for payment on the note. *See* Fed. R. Civ. P. 56(e)(2). Accordingly, Kennedy is entitled to summary judgment on the issue of Adkinson's liability for breach of note. Furthermore, the court finds the plain language of the note supports Kennedy's calculation of damages from breach of the note.[5] However, because Adkinson claims setoff rights, the court must consider whether Adkinson's counterclaims show a genuine issue of fact for trial regarding Kennedy's damages.

---

[4] Neither party claims the note is ambiguous.

[5] Moreover, while Adkinson argues that the value of his counterclaims exceeds the value of Kennedy's damages from breach of the note, Adkinson does not dispute Kennedy's claims regarding the principal and interest due on the note.

Case No: 3:08cv389/MCR/MD

Adkinson's Counterclaims

Adkinson's allegations with regard to both MI1's Teagarden Project and MI11's Factory Hills Project are similar. According to Adkinson, NFC spent a substantial sum of money pursuant to a development contract with the LLC; the LLC's operating agreement provided that NFC would receive a higher repayment priority than for loans by members;[6] Kennedy maneuvered to capture the value of the project for herself, whether by foreclosing on a note or refusing to assist the company in obtaining refinancing; Kennedy's capture of value was a "repayment" in violation of the priority terms of the operating agreement; and Kennedy's maneuvers, and out-of-priority repayment, constituted breach of contract, breach of fiduciary duty, and usurpation of corporate opportunity.[7] In her summary judgment motion, Kennedy addresses neither the events surrounding the Teagarden and Factory Hills projects nor the meaning of the operating agreements. Accordingly, the court does not discuss these matters in further detail. Instead, the court will address Kennedy's motion, the sum of which attacks Adkinson's claims on two grounds: Adkinson's standing to bring the claims and Kennedy's protection from individual liability.

Kennedy argues that Adkinson's corporations were parties to the operating agreements, not Adkinson individually, and thus any alleged injury was suffered by the corporations, not Adkinson himself. According to Kennedy, Adkinson is not the real party in interest, and has no standing to bring the claims. In response, Adkinson maintains that his corporations have assigned to him, personally, all claims against Kennedy.

The assignee of a claim not only has standing, *see Sprint Communications Co., L.P. v. APCC Serv., Inc.*, 128 S. Ct 2531, 2536 (2008), but is also the real party in interest. *See La-Tex Supply Co. v. Fruehauf Trailer Div., Fruehauf Corp.*, 444 F.2d 1366, 1368 (5th Cir. 1971), *cert denied,* 92 S.Ct. 287 (1971); *see also* 6A CHARLES ALAN WRIGHT & ARTHUR R.

---

[6] (*See* doc. 7-4.)

[7] While the header to Count II of Adkinson's counterclaim, unlike the header to Count I, does not indicate a claim for usurpation of corporate opportunity, it is clear from the body of the counterclaim and the accompanying request for remedies that Adkinson also alleges usurpation of corporate opportunity as to Count II.

Case No: 3:08cv389/MCR/MD

MILLER, FEDERAL PRACTICE AND PROCEDURE § 1545 at 346 (2d. ed. 1990).[8]  Thus, to determine whether Adkinson has standing, the court must look to the assignments of his corporations' claims.  The court is bound to apply Florida law, including its choice of law rules.  *See Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938); *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 497 (1941).  Standing is a substantive matter.  *See Siegel v. Novak*, 920 So. 2d 89, 93 (Fla 4th DCA 2006); *see also* U.S. v. 936.71 Acres of Land, More of Less, in Brevard County, 418 F.2d 551, 556 (5th Cir. 1969).  To decide what state law to apply to a substantive matter, the court applies the "most significant relationship" test, *see* Bishop v. Florida Specialty Paint, 389 So. 2d 999, 1001 (Fla. 1980); *Siegel*, 920 So. 2d at 93; *see also* Restatement (Second) of Conflict of Laws §§ 145, 188 (1971), and concludes that Mississippi has the most significant relationship to this dispute.  The companies at the center of this dispute were formed pursuant to Mississippi law in order to develop land in Mississippi.  Furthermore, by the terms of the MI1 and MI11 operating agreements, Mississippi law governs claims under the agreements.[9]  Thus, the court finds that Mississippi law governs the assignments.

Under Mississippi law, "[t]he assignee of any chose in action may sue for and recover on the same in his own name, if the assignment be in writing."  MISS. CODE. ANN. § 11-7-3 (1972); *see also J. Morco, Inc.*, 675 F. Supp at 1041.  Initially, Adkinson submitted an affidavit in which he stated that his corporations had assigned claims to him, but he did not provide the court with a written assignment.  In response to the court's order to provide evidence of the assignments, Adkinson provided written assignments of claims from Mississippi Capital Investments I and XI, Inc.  However, Adkinson did not provide any such assignment from NFC, his development corporation.  Kennedy argues, and the court

---

[8] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

[9] Generally, Florida gives effect to choice of law provisions in contracts.  *See Walls*, 824 So. 2d at 1018.  The choice of law provision in the operating agreements states: "Governing Law.  The laws of the State of Mississippi shall govern the validity of this Agreement, the construction of its terms, and the interpretation of the rights and duties of the Members." (*See* doc. 7-6.)

agrees, that the only harm Adkinson alleges in his counterclaim is to NFC. In Adkinson's own words: "Defendant claims damages in the amounts of $302,000.00 and $291,387.58 with regards to MI1 and MI11 respectively." (doc. 38.) These are the amounts allegedly expended by NFC in its development for MI1 and MI11. Adkinson has alleged harm solely to NFC, not to Adkinson, the corporations which assigned their claims to him, or the LLCs.[10] Thus, the court finds Adkinson has no standing to bring his counterclaims. Furthermore, because Adkinson's claim of setoff rights was his sole ground for opposing summary judgment, there exists no genuine issue of material fact as to Kennedy's claim.[11]

**Conclusion**

Accordingly, Kennedy's Motion for Summary Judgment (doc. 30) is GRANTED. Final judgment is entered in favor of Kennedy and against Adkinson on Kennedy's claim in the amount of $528,003.94. This amount is comprised of $484,024.53 in principal, plus $21,781.03 in interest accrued prior to the date payment was due, plus $22,198.38 in pre-judgment interest, calculated at the rate of $41.57 per day times 534 days. Kennedy is also entitled to post-judgment interest at a rate of .27 percent per annum, the weekly average 1-year constant maturity Treasury yield for the calendar week ending November 27, 2009. *See* 28 U.S.C. § 1961. The clerk is directed to tax costs against Adkinson.

**DONE and ORDERED** this 2nd day of December, 2009.

       s/ *M. Casey Rodgers*
       **M. CASEY RODGERS**
       **UNITED STATES DISTRICT JUDGE**

---

[10] The argument possibly could have been made that NFC was a third party beneficiary under the operating agreements, such that Adkinson's other corporations may have had standing to seek specific performance on behalf of NFC. *See* RESTATEMENT (SECOND) OF CONTRACTS § 305 cmt. a (1981). Adkinson, however, has not made this argument, so the court does not consider whether it has merit in this case.

[11] Because Adkinson did not have standing to bring his counterclaims, the court does not consider the merits of those claims.